UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| **Leroy R. Montgomery,** | ) | Civil Action No.: 4:25cv1998 JD |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| **Capital One Bank USA, N.A.,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## COMPLAINT

1.  This is an action brought by Plaintiff, Leroy R. Montgomery, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA"). The Plaintiff also seeks compensatory and punitive damages for Defendant's violations of South Carolina common law as set forth herein.

2.  The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3.  Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

4. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including § 1681s-2(b) which is one of the cornerstone provisions of the FCRA.

5. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

6. The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

## JURISDICTION AND VENUE

7. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331 and §1332.

8.  Venue is proper in the Florence Division because the Plaintiff resides in Florence County and the Defendant transacted business in this division.

## PARTIES

9.  Plaintiff, Leroy R. Montgomery, is a resident and citizen of the State of South Carolina, Florence County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10. Defendant Capital One Bank USA, N.A., ("Capital One") whose correct corporate status is unknown to the Plaintiff at this time, was in all respects and at all times relevant herein, doing business in the State of South Carolina. Defendant Capital One may be served with process by way of its CEO, Richard D. Fairbank, at 1680 Capital One Drive, McLean, Virginia 22102-3491.

## FACTUAL ALLEGATIONS

11. On December 15, 2022, Plaintiff went to his bank, Palmetto First Federal Credit Union, to find out his credit score, as he was trying to improve his credit in order to be in a position to buy a home. The bank representative informed Plaintiff his credit score had dropped tremendously and asked if he had taken out any credit cards. Plaintiff was shocked to hear this information because he did not use, own, nor had he even ever applied for a credit card at this time.

12. The Palmetto First Federal Credit Union Infile Credit Report dated December 15, 2022, showed a derogatory Capital One Account reporting as 120 days past due, and a First Premier Account reporting as a charge-off. Neither of these accounts were opened by Plaintiff.

13. Palmetto First Federal Credit Union provided Plaintiff a copy of the Infile Credit Report, phone numbers for both Capital One and First Premier, and recommended that he also contact the credit reporting agencies listed on the report.

14. Plaintiff immediately called Defendant regarding the fraudulent Capital One Account ending 3560 (hereinafter "Account"). Plaintiff specifically asked Defendant how the Account was opened and Defendant responded that the Account was in his name so why was he asking. Plaintiff responded that he had never opened an account with Defendant. Plaintiff also asked what address was used to open the Account. Defendant informed Plaintiff the address used was 1106 Fran Drive, Florence, South Carolina. Plaintiff then told Defendant that he had not lived at that address for years and that the Account was not his.

15. Thereafter, Plaintiff called Experian to dispute the fraudulent Account reporting on the Infile Credit Report and to request a copy of his Experian credit report.

16. On January 3, 2023, Experian sent Plaintiff its Dispute Results following Plaintiff's dispute showing Defendant had verified the Account was accurate. Therefore, the Account continued to be reported on Plaintiff's Experian credit report as a charged-off account, with $1,107 written off and $1,107 past due.

17. On or about February 1, 2023, Plaintiff called the Consumer Financial Protection Bureau ("CFPB") to report fraudulent credit card accounts reporting on his credit reports, including the Account. Thereafter, on February 2, 2023, the CFPB sent Plaintiff a letter stating that he would need to either file a complaint online or by phone. Included with the letter was a form complaint which Plaintiff completed and returned to the CFPB.

18.     After speaking with the CFPB, Plaintiff called TransUnion to request a copy of his credit report, to dispute the fraudulent Account, and to add a credit freeze.

19.     On or about February 8, 2023, TransUnion sent Plaintiff its Investigation Results showing that Defendant had verified the Account as accurate and updated some of the Account information. As a result, the fraudulent Account continued to be reported on the Plaintiff's TransUnion credit report as a derogatory account.

20.     On or about February 13, 2023, Plaintiff received a letter from Fairway Independent Mortgage Corp stating his Experian credit score was 540.

21.     On April 4, 2023, Plaintiff filed a police report with the Florence County Sheriff's Office concerning the fraudulent credit cards that had been taken out in his name for which he did not apply, including the Account.

22.     On or about July 18, 2023, Plaintiff filed two separate complaints with the CFPB regarding the fraudulent accounts opened in his name. One of the complaints was against Defendant and the other was against First Premier Bank.

23.     On August 22, 2023, the CFPB notified Plaintiff that it had received his complaints and was referring them to the proper entities for investigation.

24.     On or about August 31, 2023, Plaintiff received a letter from First Premier Bank concerning the fraudulent credit card account ending 8430. In its letter, First Premier Bank stated it had completed its investigation and had determined Plaintiff was not responsible for the disputed account. Accordingly, First Premier Bank sent notification to the credit reporting agencies to delete the account from Plaintiff's credit history.

25.     Plaintiff did not receive any correspondence from Defendant following his

5

complaint to the CFPB which led him to believe the Account had also been removed from is credit reports.

26.     On or about February 8, 2024, Plaintiff obtained a copy of his TransUnion credit report online through annualcreditreport.com. Upon reviewing the credit report, Plaintiff discovered that there were numerous fraudulent accounts reporting, including the Account, that did not belong to Plaintiff.

27.     On or about February 8, 2024, Plaintiff also obtained a copy of his Equifax credit report which was reporting the Account as a charged off account belonging to Plaintiff. Plaintiff's Equifax credit report also showed a hard inquiry by Defendant which Plaintiff did not authorize or approve.

28.     On or about February 8, 2024, Plaintiff obtained a copy of his Experian credit report online which revealed that there were now two fraudulent Capital One Accounts reporting as belonging to Plaintiff.

29.     On or about February 27, 2024, Plaintiff sent a dispute letter to TransUnion specifically disputing the new Capital One Account #517805937326xxx and the Capital One Account #517805868139xxx as fraudulent accounts. Additionally, Plaintiff disputed a hard inquiry by Defendant as Plaintiff did not apply for credit from Defendant, nor did he authorize the hard inquiry of his credit. TransUnion received Plaintiff's dispute on March 1, 2024, and thereafter forwarded a copy to Defendant.

30.     On or about February 27, 2024, Plaintiff also sent a dispute letter to Equifax. In his letter, Plaintiff specifically disputed the Account as fraudulent. Plaintiff also disputed the hard inquiry by Defendant which Plaintiff did not authorize. Equifax received Plaintiff's

dispute on March 10, 2024.

31. That same day, Plaintiff sent a dispute letter to Experian specifically disputing the two Capital One Accounts currently reporting on his credit report as fraudulent. Experian received Plaintiff's dispute on March 1, 2024, and thereafter forwarded a copy to Defendant.

32. On or about March 24, 2024, Plaintiff received a letter from MRS BPO, LLC, (hereinafter "MRS") a debt collector trying to collect on the Account.

33. On or about March 27, 2024, Plaintiff received Experian's Dispute Results stating that Account #517805868139**** was verified by Defendant as accurate and updated. Accordingly, Experian continued to report the fraudulent, derogatory Account as belonging to Plaintiff. Capital One Account #517805937326xxx was deleted.

34. On or about April 12, 2024, Plaintiff sent a second dispute letter to Experian wherein he stated he had received Experian's dispute results, and the fraudulent Account was still reporting on his credit. Plaintiff again disputed the Account and included a copy of the police report he filed regarding the theft of his identity. Experian received Plaintiff's letter and police report on April 19, 2024, and thereafter forwarded same to Defendant.

35. On or about April 28, 2024, Plaintiff received a letter from Equifax stating it had received Plaintiff's dispute regarding the Account, but it would not be conducting any further investigation because it was currently processing Plaintiff's previously submitted dispute.

36. On or about May 6, 2024, TransUnion forwarded its Investigation Results to Plaintiff. In these results, TransUnion informed Plaintiff that Defendant had verified the Account as accurate. As a result, the Account continued to be reported as a derogatory

account on Plaintiff's TransUnion credit report.

37. On or about May 10, 2024, Plaintiff received a letter from MRS stating that it had received a request for information on the Account. MRS informed Plaintiff the Account was opened on April 6, 2022, and that the last charge on the Account was made on April 20, 2022. MRS included the first statement on the Account which showed that the credit limit on the Account was exceeded within five days of the Account being opened.

38. On or about May 15, 2024, Experian sent Plaintiff the results of its investigation into his dispute showing that Defendant had again verified the Account as accurate. Accordingly, the fraudulent Account continued reporting on Plaintiff's Experian credit report as a derogatory, charged-off account.

39. On or about May 23, 2024, Plaintiff sent a second dispute letter to TransUnion again disputing the Account as fraudulent. With his letter, Plaintiff included a copy of the police report he filed regarding the theft of his identity. TransUnion received Plaintiff's dispute on June 4, 2024, and thereafter forward same to Defendant.

40. On or about June 7, 2024, TransUnion mailed Plaintiff it's Investigation Results showing it had deleted the Account from Plaintiff's credit report. TransUnion also mailed Plaintiff a copy of his updated credit report dated June 7, 2024, which confirmed the Account had been removed. Additionally, the previously disputed hard inquiry by Defendant was no longer reporting as it had finally aged off.

41. On or about June 10, 2024, Plaintiff sent a third dispute letter to Experian again disputing the fraudulent Account and providing another copy of his police report regarding the Account. Experian received Plaintiff's third dispute and police report on June 14, 2024,

and thereafter forwarded both to Defendant.

42.     On June 10, 2024, Plaintiff sent a dispute letter to MRS stating that he had received MRS' May 10, 2024, letter but it did not contain a copy of the Account application. Plaintiff informed MRS that he had never had a Capital One account and that he had been the victim of identity theft. Plaintiff enclosed a copy of the police report he filed and requested that MRS close the Account and return it to Defendant due to fraud. Plaintiff also mailed Defendant a copy of this letter with the police report.

43.     On or about July 3, 2024, TransUnion forwarded Plaintiff a new Investigation Results, wherein TransUnion informed Plaintiff that the Account had been reinserted onto his credit report due to Defendant's verification of the Account as accurate.

44.     On or about July 4, 2024, Equifax sent Plaintiff a letter stating that, as a result of his dispute, the Account had been removed from his Equifax credit file. However, Defendant had recently requested to have the Account information reinserted on Plaintiff's Equifax credit file and submitted a certification that the Account belonged to Plaintiff and that the information reporting was complete and accurate. As a result, Equifax reinserted the Account back onto Plaintiff's Equifax credit report as belonging to Plaintiff.

45.     On or about July 8, 2024, Plaintiff received a letter from Defendant stating that it had finished its investigation of Plaintiff's fraud claim on the Account and determined that there were no signs of fraud.

46.     On or about July 9, 2024, Experian sent Plaintiff two separate Dispute Results which both stated that Defendant had again verified the Account as accurate. Accordingly, despite receipt of Plaintiff's police report, Experian continued reporting the fraudulent

Account as belonging to Plaintiff.

47. On or about August 22, 2024, Plaintiff sent a third dispute letter to TransUnion. In his letter, Plaintiff stated he did not understand why TransUnion would remove the Account and then put it right back on when he had already told them it was a fraudulent account opened in his name. Plaintiff again included a copy of the police report he filed with his dispute letter to TransUnion. TransUnion received Plaintiff's Third Dispute Letter on August 28, 2024, and thereafter forwarded same to Defendant.

48. On or about August 22, 2024, Plaintiff sent a second dispute letter to Equifax. In his letter, Plaintiff disputed the Account as fraudulently opened in his name without his knowledge or permission and requested it be removed from his Equifax credit report.

49. On or about August 22, 2024, Plaintiff sent a fourth dispute letter to Experian. In this letter, Plaintiff stated he had received two separate dispute results of which he couldn't find a difference, as both were reporting the Account as belonging to Plaintiff. Plaintiff disputed the Account as a fraudulent account and asked it be removed from his credit report. Plaintiff included a copy of the police report he filed. Experian received Plaintiff's fourth dispute letter on August 27, 2024.

50. On or about August 30, 2024, TransUnion forwarded Plaintiff a letter stating his request to block the fraudulent Account was declined.

51. On or about September 12, 2024, TransUnion sent Plaintiff its Investigation Results stating that Defendant hade verified the Account as accurate. As a result, the Account continued reporting on Plaintiff's TransUnion credit file as a charged-off, derogatory account.

52. On or about September 24, 2024, having not received a response from Equifax to his second dispute letter, Plaintiff sent a third dispute letter disputing the Account as fraudulently opened in his name without his knowledge or permission and requested it be removed from his Equifax credit file. Equifax received Plaintiff's third dispute letter on October 1, 2024, and thereafter forwarded same to Defendant.

53. To date, Defendant continues to report the fraudulent Account to the credit reporting agencies as belonging to Plaintiff; continues to verify the reporting of the Account as accurate; and continues to publish false information regarding the Plaintiff to third parties and the public at large.

54. Defendant repeatedly failed to make a reasonable investigation into Plaintiff's disputes that the Account was fraudulent.

55. Defendant reinserted the fraudulent Account on Plaintiff's credit reports after the consumer reporting agencies had removed the Account.

56. While Defendant was publishing false information regarding the Plaintiff to the consumer reporting agencies, Plaintiff's credit reports were viewed by Truist Bank, Xactus, First Phase Visa, JPMCB, Palmetto First Federal Credit Union, Srchamer/McLeod Health, MRS Assoicates, CPC Credit Vision, First Source Advantage, Kubota Credit Corp., Fairway Mortgage, AMEX, and Harris & Harris.

## COUNT ONE
**(Fair Credit Reporting Act)**

57. The Plaintiff adopts the averments and allegations of paragraphs 11 through 56 hereinbefore as if fully set forth herein.

58. Within the two years prior to the filing of this Complaint, Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation after receiving notice that the Plaintiff disputed the Account information said Defendant had provided to a consumer reporting agency.

59. Within the two years prior to the filing of this Complaint, Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agency pursuant to §1681i.

60. Within the two years prior to the filing of this Complaint, Defendant negligently violated 15 U.S.C. §1681s-2(b) by failing to conduct an investigation as to the accuracy of the information reported by the Defendant to the consumer reporting agencies.

61. Within the two years prior to the filing of this Complaint, Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(C) by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any, to the consumer reporting agencies.

62. Within the two years prior to the filing of this Complaint, Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the Accounts the subject of this action was inaccurate, incomplete, false, and misleading.

63. As a result of Defendant's violations set forth above, the Plaintiff suffered damage to his credit and credit reputation, was denied credit, and lost credit opportunities. Additionally, Plaintiff suffered humiliation, anxiety, stress, loss of sleep, anger, worry, loss of enjoyment of life, physical sickness, headaches, and mental anguish. Plaintiff has also suffered damages for attorneys' fees, certified mail expenses, and other out of pocket losses.

## COUNT TWO
### (Fair Credit Reporting Act)

64.     The Plaintiff adopts the averments and allegations of paragraphs 11 through 63 hereinbefore as if fully set forth herein.

65.     Within the two years prior to the filing of this Complaint, Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation after receiving notice that the Plaintiff disputed the Account information Defendant had provided to a consumer reporting agency.

66.     Within the two years prior to the filing of this Complaint, Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agency pursuant to §1681i.

67.     Within the two years prior to the filing of this Complaint, Defendant willfully violated 15 U.S.C. §1681s-2(b) by failing to conduct an investigation as to the accuracy of the information reported by Defendant to a consumer reporting agency.

68.     Within the two years prior to the filing of this Complaint, Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(C) by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any, to the consumer reporting agency.

69.     Within the two years prior to the filing of this Complaint, Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the Accounts the subject of this action was inaccurate, incomplete, false, and misleading.

70.     As a result of Defendant's violations set forth above, the Plaintiff suffered damage

to his credit and credit reputation, was denied credit, and lost credit opportunities. Additionally, Plaintiff suffered humiliation, anxiety, stress, loss of sleep, anger, worry, loss of enjoyment of life, physical sickness, and mental anguish. Plaintiff has also suffered damages for attorneys' fees, certified mail expenses, and other out of pocket losses.

### COUNT THREE
### (Fair Credit Reporting Act)

71. Plaintiff hereby adopts all of the allegations set forth in paragraphs 11 through 70 as if set forth fully herein.

72. TransUnion, LLC ("TransUnion"), and Equifax Information Services, LLC ("Equifax"), the entities from which Defendant obtained Plaintiff's credit reports, are consumer reporting agencies within the meaning of the Fair Credit Reporting Act.

73. The credit reports Defendant obtained from TransUnion and Equifax relating to Plaintiff were "consumer reports" within the meaning of the Fair Credit Reporting Act.

74. Under 15 U.S.C. §1681b(f), Defendant is prohibited from obtaining Plaintiff's credit reports unless Defendant has a permissible purpose for obtaining said reports.

75. Defendant's obtainment of Plaintiff's credit reports when Plaintiff did not initiate same by way of applying for credit was a violation of 15 U.S.C. §1681b(f) as Plaintiff did not authorize Defendant to retrieve or view his credit reports nor was a firm offer of credit made to Plaintiff.

76. Defendant had no permissible purpose in obtaining Plaintiff's credit reports.

77. In connection with Defendant's practices of obtaining credit reports without a permissible purpose, and specific to Defendant having obtained Plaintiff's credit reports

without a permissible purpose, Defendant acted negligently and/or willfully.

78. In connection with Defendant's practices, Defendant certified to TransUnion and Equifax that it was requesting Plaintiff's credit reports in response to a request by Plaintiff when, in actuality, said request was made without Plaintiff's permission or knowledge. Accordingly, Defendant obtained the credit reports through false pretenses within the meaning of 15 U.S.C. §1681n(b).

79. As a result of Defendant's negligent and/or willful practice of violating the Fair Credit Reporting Act, Plaintiff has been caused to suffer damage to his credit reputation and credit score, worry, humiliation, fear, loss of sleep, anxiety, nervousness, loss of enjoyment of life, physical sickness, physical pain, and mental anguish for which Plaintiff seeks actual damages.

80. As a result of Defendant's negligent and/or willful practice of violating the Fair Credit Reporting Act, Defendant is liable under 15 U.S.C. §1681o for the costs of bringing this action as well as reasonable attorneys' fees.

## COUNT FOUR
**(Defamation, Libel and Slander)**

81. The Plaintiff adopts the averments and allegations of paragraphs 11 through 79 hereinbefore as if fully set forth herein.

82. Defendant willfully, wantonly, recklessly and/or maliciously published and communicated false and defamatory statements regarding Plaintiff to third parties and the public at large. Said statements harmed Plaintiff's reputation and caused Plaintiff physical sickness, mental anguish and emotional distress.

83. Said communications were false in that Plaintiff was not indebted to Defendant. The Account was fraudulently opened in Plaintiff's name as a result of identity theft. Plaintiff did not owe any balance on the Account. Despite repeated notice of the fraud, Defendant continued to communicate false and defamatory statements that the Account belonged to Plaintiff and that Plaintiff owed money on the Account.

84. Said false and defamatory statements have harmed the reputation of Plaintiff and/or deterred third persons from associating with Plaintiff. Specifically, Defendant reported the Account to the national consumer reporting agencies as belonging to Plaintiff so the Account would appear on Plaintiff's credit reports. Plaintiff's credit reports were viewed by numerous third parties as set out above and Plaintiff was denied credit, lost credit opportunities, and suffered other damages.

85. Defendant communicated to third parties and the public at large false information concerning Plaintiff, disseminating and imputing false and misleading credit worthiness information concerning Plaintiff, including, but not limited to, reporting that Plaintiff owed the Account the subject of this action.

86. At the time said communications were made, Defendant knew or should have known the falsity of the communications or recklessly disregarded the potential inaccuracy of the information, yet knowingly, willfully and maliciously communicated the falsity.

87. As a result of Defendant's intentional communications to third parties of the false information, Plaintiff was caused to suffer injury to his reputation in the eyes of his community and the public at large, and was forced to endure credit reporting of the Account in spite of the fact that Plaintiff did not owe the Account as it fraudulently opened in his

name without his knowledge or permission. Additionally, Plaintiff was forced to endure collection activities by MRS.

88.    As a proximate consequence of said defamation, libel and slander, Plaintiff was caused to have negative credit reports, to be held up to public ridicule or shame, to be denied a mortgage, and made to suffer humiliation, anxiety, loss of sleep, anger, worry, physical sickness, loss of enjoyment of life, and mental anguish for which he claims compensatory and punitive damages.

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A.    Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.    Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.    Costs and reasonable attorneys' fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2);

D.    For compensatory and punitive damages in an amount to be determined by a struck jury for Defendant's defamation of Plaintiff;

E.    For this trial to be heard by a jury; and

F.    For all such other and further relief as the Court may deem just and proper.

*/s/ Penny Hays Cauley*
Penny Hays Cauley, Fed. ID No. 10323
Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

*/s/ Penny Hays Cauley*
Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL – RESTRICTED DELIVERY:**
Capital One Bank USA, N.A.
c/o Richard D. Fairbank, CEO
1680 Capital One Drive
McLean, VA 22102-3491